IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEREMY M. BRINKER and
ARTHUR J. MORRISSETTE,
                  Plaintiffs,

v.

WILLIAM ROBERT NAMCHECK,
d/b/a WRN TRUCKING,

                  Defendant.

OPINION and ORDER

07-cv-669-slc

---

This is a civil action for monetary relief brought under 49 U.S.C. § 14704(a)(2). Plaintiffs Jeremy M. Brinker and Arthur J. Morrissette contend that defendant WRN Trucking has violated federal "Truth in Leasing" regulations applicable to federally regulated motor carriers who lease equipment for interstate shipping. In addition, plaintiff Brinker asserts a breach of contract claim under Wisconsin law. Jurisdiction is present. 28 U.S.C. § 1331, 1367.

Now before the court are cross motions for partial summary judgment on all of plaintiffs' claims except plaintiff Brinker's claim for breach of contract. Defendant's motion for summary judgment will be denied. Although defendant contends that plaintiffs' Truth in Leasing claims are barred by the statute of limitations, the statute that defendant identifies does not apply.

Plaintiffs' motion for summary judgment will be granted as to their claims that: (1) defendant violated 49 C.F.R. §§ 376.12(h) and (j) by charging plaintiffs for drug tests, single state registration and insurance without clearly specifying those charges in their leases; (2) defendant violated § 376.12(f) by failing to pay plaintiff Brinker his final settlement within 15 days of when he handed in his required paperwork to defendant; and (3) defendant violated § 376.12(e) by charging plaintiff Morrissette a federal 2290 Heavy Vehicle Use Tax that he had

already paid. Moreover, I conclude that the proper measure of damages for defendant's violations of the Truth in Leasing regulations is the exact amount defendant overcharged or withheld for each violation; because those amounts are not in dispute, the issue of damages has been resolved as to these claims.

However, certain facts remain in dispute related to plaintiffs' claims that: (1) defendant violated § 376.12(e) by failing to refund plaintiffs the value of the unused portion of their license plates when they terminated their leases; and (2) defendant violated § 376.12(f) by failing to pay plaintiff Morrissette his final settlement within 15 days of when he handed in his required paperwork to defendant. Therefore, plaintiffs' motion for summary judgment will be denied as to these claims.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed:

## UNDISPUTED FACTS

Defendant WRN Trucking is a sole proprietorship owned by William Robert Namcheck. Defendant is a federally-regulated motor carrier that provides interstate transportation services to the public, authorized by the federal Motor Carrier Safety Administration.

At all times relevant to this case, plaintiff Jeremy M. Brinker was an owner-operator who leased a motor vehicle to defendant and drove that vehicle for defendant. From September 2004 until December 2004, plaintiff Arthur J. Morrissette was an owner-operator who leased a motor vehicle to defendant and drove that vehicle for defendant.

In early September 2004, plaintiffs Brinker and Morrissette each entered into separate lease agreements with defendant. The lease agreements were drafted by defendant, and the terms of each plaintiff's lease agreement were identical except for the date, the name of the lessor and the identity of the leased vehicle.

Under their respective lease agreements, each plaintiff moved certain freight shipments of defendant's under defendant's interstate operating authorities. Plaintiffs were compensated on the basis of miles traveled for the customers of defendant. Defendant issued plaintiffs a settlement statement, usually weekly, setting forth the amount of revenue due plaintiffs. The settlement statements included a calculation of the net amounts due plaintiffs after making deductions for certain expenses.

Each plaintiff's lease agreement included the following provisions (with spelling errors corrected):

> 5. [Plaintiff] agrees to comply, or cause compliance, with all safety rules required by [defendant], and to comply with all the rules and regulations of the FHWA and the DOT, or any state regulatory body in connection with the operation of said equipment.
>
> 6. [Plaintiff] agrees that the equipment described herein will be kept in first class condition and repair. [Plaintiff] agrees to pay all of the operating expenses, including but not limited to repairs and replacements of parts and tires. [Plaintiff] will also pay all taxes, license fees and fines pertaining to [plaintiff's] own equipment. [Plaintiff] agrees to provide all tie down and tarp equipment necessary to secure the load and deliver to destination safely.
>
> * * *
>
> 9. If [defendant] shall be required to make any advances or payments for and on behalf of [plaintiff's] obligation for necessary operation expenses or repairs on said equipment, then [plaintiff] does assign and set over to [defendant], from funds due [plaintiff] herein, a sum sufficient to repay [defendant's] said advances.

The lease agreement also provided "additional terms to lease for WRN Trucking financed owner operators." Under this heading, the lease provided that:

> 3). All owner operators will be subject to the terms and conditions of Winona Leasing lease agreement .
>
> * * *
>
> 5). Failure to follow rules of turning in your paperwork will result in a delay of payment for that week .
>
> * * *
>
> 7). In the event the owner operator should default, the owner operator will forfeit two weeks gross income plus the truck.

The Winona Leasing lease agreement referenced in 3) describes default (under the heading "15. DEFAULT") as "fail[ure] to pay any rental payment in full on the date due."

Neither of plaintiff's Lease Agreements include any provision allowing defendant to withhold payment to the owner-operator after termination if the owner-operator fails to return and remove identification devices, nor does either lease explain that the payment is to be made within 15 days after submission of certain delivery documents and other paperwork.

In the course of leasing from plaintiffs, defendant charged plaintiffs the following:

1. Public liability insurance and cargo liability insurance ($17,236.71 to plaintiff Brinker and $2,033.62 to plaintiff Morrissette):

2. Drug tests   ($166.00 to plaintiff Brinker and $139.00 to plaintiff Morrissette);

3. Single state registration  ($258.59 to plaintiff Brinker)

In addition, defendant charged plaintiff Morrissette $458.33 as a pro-rated amount for the federal 2290 Heavy Vehicle Use Tax for the period between July 1, 2004 and June 30, 2005. Plaintiff Morrissette had already paid that tax.

4

Plaintiff Morrissette voluntarily terminated his lease with defendant on December 17, 2004. Plaintiff Brinker voluntarily terminated his first lease with defendant on May 5, 2005, but entered into a second lease with defendant having identical terms on August 12, 2005. Plaintiff Brinker voluntarily terminated his second lease with defendant on October 22, 2007.

Defendant did not pay either plaintiff for services rendered during their respective last two weeks of work. Plaintiff Brinker's final settlement reflected a net balance due to him of $2,808.73 and plaintiff Morrissette's was $4,302.80. Plaintiff Brinker turned in the necessary paperwork to receive his last two weeks settlement by November 2007 at the latest. (The parties dispute whether plaintiff Brinker returned the necessary paperwork in a timely manner and whether plaintiff Morrissette ever turned in the required paperwork for his last two weeks.)

In addition, defendant did not refund to plaintiffs any unused portion of license plates earlier charged to plaintiffs. At the time of plaintiff Brinker's termination, the value of the unused portion of the license plate charged to him was $1,327.64. At the time of plaintiff Morrissette's termination, the value of the unused portion of the license plate charged to him was $1,379.04. (The parties dispute whether either plaintiff ever turned in the license plates to defendant.)

## OPINION

Independent owner-operators lease truck equipment and provide driving services to federally regulated motor carriers. *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 780 (8th Cir. 1999). These leases are governed by regulations promulgated by the Interstate Commerce Commission and known as "Truth in Leasing" regulations, located

at 49 C.F.R. Part 376. *Owner Operator Independent Drivers Ass'n, Inc. v. Swift Transportation Co., Inc.*, 367 F.3d 1108, 1110 (9th Cir. 2004). Among other things, these regulations require that leases between owner-operators and motor carriers be in writing and contain certain terms. 49 U.S.C. § 14704(a)(2) provides a cause of action for persons injured by a carrier's violation of the regulations. *New Prime, Inc.*, 192 F.3d at 785.

Plaintiffs have brought several claims under § 14704(a)(2), contending that defendant violated certain Truth in Leasing regulations by (1) charging plaintiffs for insurance, drug tests and state registration, (2) withholding their last payments and (3) failing to refund the remaining value of license plate fees covering time extending beyond plaintiffs' respective terminations and charging for taxes already paid. Plaintiffs have moved for summary judgment on those claims. Defendant has filed a cross motion for summary judgment on plaintiffs' Truth in Leasing claims on the ground that most of them are barred by the statute of limitations. I take up that threshold question first.

A. Statute of Limitations

28 U.S.C. § 1658(a) is the "catch-all" statute of limitations, setting the limitations period at four years for civil actions arising under federal statutes enacted after December 1, 1990 "[e]xcept as otherwise provided by law." Defendant contends that the four year catch-all statute does not apply to actions brought under § 14704(a)(2) because 49 U.S.C. § 14705 sets the limitations period for such actions. Section 14705 establishes several limitations periods for actions brought by and against motor carriers. Defendant contends that either § 14704(c) or § 14704(b) applies to actions brought under § 14704(a)(2), making the limitations period either

6

18 months or two years. If defendant is correct on either of its theories, most of plaintiffs' claims are barred; otherwise, none of them are.

1. Section 14704(c)

Defendant acknowledges that, on the face of the statute, § 14705(c) applies only to causes of action brought under § 14704(b), not actions brought under § 14704(a)(2). Specifically, § 14705(c) states that "[a] person must file a complaint with the Board or Secretary, as applicable, to recover damages under section *14704(b)* within 2 years after the claim accrues." (emphasis added). Nonetheless, defendant contends that the statute must not be read literally because to do so would produce "absurd results" and the legislative history shows that the statute was intended to cover damages actions brought under § 14704(a)(2), but came to apply instead to actions brought under § 14704(b) as a result of a "scrivener's error."

Defendant's contention has some support in the case law. Currently, there is a split among district courts concerning whether § 14705(c) applies to actions brought under § 14704(a)(2). The majority of district courts take § 14705(c) at its word, holding that it does not apply to § 14704(a)(2) actions. *Smiley v. Smooth Operators, Inc.*, No. 06-C-146-C, 2006 WL 1896357, at * 3-5 (W.D. Wis. July 6, 2006); *Owner-Operator Independent Drivers Association, Inc. v. C.R. England, Inc.*, 325 F. Supp. 2d 1252, 1264-65 (D. Utah 2004); *Owner-Operator Independent Drivers Association, Inc. v. Bulkmatic Transport* Co., No. 03-C-7869, 2004 WL 1151555, at *4-5 (N.D. Ill. May 3, 2004); *Owner-Operator Independent Drivers Association, Inc. v. Ledar Transport*, No. 00-0258-CV-W-FJG, 2004 U.S. Dis. LEXIS 7869, *16-18 (W.D. Mo. Jan. 7, 2004); *Owner-Operator Independent Drivers Ass'n, Inc. v. Heartland Express, Inc.*, No. 3-01-CV-80179, 2003 U.S.

Dist. LEXIS 25284, *8-12 (S.D. Iowa Jan. 31, 2003). A few courts, however, have declined to read the statute literally, instead concluding that § 14705(c) does apply to damages actions brought pursuant to § 14704(a)(2) in spite of the language of the statute. *Owner-Operator Independent Drivers Association, Inc. v. United Van Lines, LLC*, 503 F. Supp.2d 1200, 1204 (E.D. Mo. 2007); *Owner-Operator Independent Drivers Association, Inc. v. Mayflower Transit, Inc.*, 2006 WL 4552833 (S.D. Ind. July 7, 2006); *Fitzpatrick v. Morgan Southern, Inc.*, 261 F. Supp.2d 978, 983-87 (W.D. Tenn.2003). No appellate court has addressed the issue.

The first court refusing to read literally §14705(c) examined the legislative history of the relevant act and determined that the legislature intended for §14705(c) to apply to damages actions brought under §14704(a)(2), but that a last-minute change to the numbering of the §14704 resulted in a "scrivener's error." *Fitzpatrick*, 261 F. Supp. 2d at 982-87. The court noted that the agency charged with enforcement and regulatory authority under the act read the statute the same way. *Id.* at 986.

Cases following *Fitzpatrick* have added that to read §14705(c) literally produces "absurd" result, first because the statute states that it applies to "damages" actions brought under §14704(b), but that section applies only to "overcharges" and second because §14705(b) sets a different statute of limitations for actions related to "overcharges." *United Van Lines,* 503 F. Supp.2d at 1204; *Mayflower Transit*, 2006 WL 4552833, *2-3. Thus, §14705(a)(2) has "no" statute of limitations while §14705(b) gets two conflicting ones.

I am not persuaded by the reasoning of the courts in the minority. There must be some basis for a court to turn to legislative history in the face of an unambiguous statute; "[t]he general rule of statutory interpretation is that one must first look to the language of the statute

8

and assume that its plain meaning 'accurately expresses the legislative purpose.'" *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir. 1992) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985)). The Court of Appeals for the Seventh Circuit recently has affirmed its view that unambiguous statutes must be taken at face value, even in the face of an arguably absurd result. In *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 983-85 (7th Cir. 2008), the court glossed the language of 28 U.S.C. § 1453(c)(1), which requires appeal to be filed "not less than 7 days after entry of" an order on a motion to remand a class action. *Id.* at 983. Although, as the court acknowledged, five other circuits had interpreted the word "less" in 28 U.S.C. § 1453(c)(1) to mean "more" because that approach "fits with the norm in appellate deadlines and the likely goal of the legislature," the court in *Spivey* declined to follow suit, explaining that the fact "[t]hat Congress has written a deadline imprecisely, or even perversely, is not a sufficient reason to disregard the enacted language." *Id.* As the court emphasized, "[l]egislative history may help disambiguate a cloudy text by showing how words work in context; it does not permit a judge to turn a clear text on its head." *Id.* at 985. *Spivey* controls here. Even if Congress intended §14705(c) to apply to §14704(a)(2) actions, the law enacted is clear on its face: it applies to §14704(b), not §14705(a)(2).

In rare circumstances, a court may turn to legislative history to interpret even a statute that is clear on its face, but "only . . . when the application of its 'plain language produces absurd or unjust results.'" *Shriver*, 989 F.2d at 901 (quoting *Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp.*, 872 F.2d 208, 213 (7th Cir.1989)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326-27 (7th Cir. 1995). Although both *United Van Lines* and *Mayflower Transit* concluded that reading §14705(c) literally would be "absurd," I

9

disagree. First, it is not "absurd" that §14705(c), limiting actions for "damages," could apply to §14704(b) when that statute allows an action for "overcharges." Although §14704(b) covers "overcharges," the section is titled "liability and *damages* for exceeding tariff rate." Thus, the statutory scheme appears to treat "overcharges" as a form of "damages." Nor does the fact that both §§14705(b) and (c) provide different limitations periods to actions for "overcharges" create "absurd" results. Section 14705(c) covers only the "overcharges" described in §14704(b), which is limited to actions for charges exceeding "a tariff in effect under section 13702." Section 14705(b) covers "overcharges" generally. The statute does not suggest that the only possible "overcharges" from which an action may arise are those found in §14704(b), nor does defendant argue this. Thus, the two limitations periods may be read to apply to different types of actions for "overcharges."

Because §§14705(b) and (c) can be read to cover different types of cases, there is no "absurdity" in taking the statutes at face value: §14705(b) covers overcharges generally, §14705(c) covers a specific subset of them and 28 U.S.C. § 1658 catches everything that falls through the cracks, including actions arising under §14704(a)(2). Although this reading may not be what Congress intended, it is what Congress voted into law. Notably, members of Congress attempted to amend the drafting error as part of the Safe, Accountable, Flexible and Efficient Transportation Equity Act of 2003, only to have that attempt fail. It is not for this court to change the law where legislative attempts have failed.

10

2. Section 14704(b)

Next, defendant contends that, although plaintiffs have brought their action pursuant to § 14704(a)(2), it is really an action for "overcharges" subject to the limitations period established in § 14705(b), which requires that "a person . . . begin a civil action to recover overcharges within 18 months after the claim accrues." Defendant contends that "overcharges" should be interpreted to include "impermissible charges," instances in which a carrier charges for items that it should not have.

Defendant offers no authority for its concededly "novel" position and I am not inclined to adopt such a tortured interpretation of the word "overcharge." The word "overcharge" includes the word "over," emphasizing that a charge is "more" than a certain amount. Thus, the language of the statute suggests some permissible amount *over* which a person cannot be charged. It does not appear to be directed to actions for charges that are not permissible at all, as is the case for plaintiffs' claims. Defendant has not persuaded me that §14705(c) should be stretched to cover actions for impermissible charges.

In sum, neither §14705(b) nor §14705(c) applies to plaintiffs' Truth in Leasing claims. Because no other potential statute of limitations is identified, I conclude that the four-year catch-all statute applies, 28 U.S.C. § 1658(a), meaning that none of plaintiffs' claims are barred.

Therefore, defendant's motion for summary judgment will be denied.

B. Truth In Leasing Regulations

49 C.F.R. § 376.12 requires that federally regulated motor carriers include certain provisions in their leases with independent owner-operators and "adhere[] to and perform[]" these provisions. Plaintiffs contend that defendant violated § 376.12 by: (a) failing to "clearly specify" in his lease that it would be charging plaintiffs for drug tests, single state registration and cargo and liability insurance, failing to specify defendant's obligation to maintain cargo and liability insurance and failing to specify the amounts it would charge back to plaintiffs for these types of insurance; (b) failing to pay plaintiffs their final settlements within 15 days of plaintiffs' submission of required documents; and (c) failing to refund plaintiffs the unused value of their license plates and charging plaintiff Morrissette for a federal tax that he had already paid. Defendant does not dispute that its leases with plaintiffs were subject to the requirements of § 376.12. Instead, it contends that the terms of its leases with plaintiffs and defendant's performance of the lease substantially complied with these requirements.

1. Charge-back items

First, plaintiffs contend that defendant violated §§ 376.12(h) and (j) by charging them for the cost of drug tests, license fees and cargo and liability insurance that defendant paid. Under 49 C.F.R. § 376.12(h), the motor carrier is required to "clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the [owner-operator's] compensation . . . together with a recitation as to how the amount of each item is to be computed." 49 C.F.R. § 376.12(j) adds that the lease must specify the motor carrier's obligation to maintain cargo and liability insurance and, "[i]f the authorized carrier will make

12

a charge back to the [owner-operator] for any of this insurance, the lease shall specify the amount which will be charged-back to the [owner-operator]."

Defendant does not dispute that it charged plaintiffs for drug tests, licenses and insurance, but contends that the terms of its lease agreements with plaintiffs satisfied the requirements of §§ 376.12(h) and (j) because the lease: (1) stated that plaintiffs would be responsible for "operating expenses, including but not limited to repairs and replacements of parts and tires" and "all taxes, license fees and fines pertaining to [plaintiff's] own equipment"; (2) required plaintiffs to comply with "all safety rules required by [defendant], and to comply with all the rules and regulations of the FHWA and the DOT, or any state regulatory body"; and (3) stated that plaintiffs would be charged back for defendant's advances to pay for "necessary operation expenses [sic]." Defendant adds that its provisions were "explained" to plaintiffs and plaintiffs received settlement statements showing which items were charged back to them.

Sections 376.12(h) and (j) do not allow defendant to require its owner-operators to play a game of connect-the-dots to figure out their charges. Both require motor carriers to provide specifics in the lease. Items may be charged back to the owner-operator only if the lease "clearly specifies" them and includes a showing of how the items are to be computed. 49 C.F.R. § 376.12(h). The carrier may charge the owner-operator insurance only if the lease specifies the amount of insurance charged back to the owner-operator and "clearly specifies" the carrier's legal obligation to maintain insurance. *Id.*, § 376.12(j). The general statements in plaintiffs' leases related to their duty to pay for "operating expenses" and comply with certain rules and regulations don't cut it. Because plaintiffs' lease agreements did not include sufficient description of the items charged back to plaintiffs or of defendant's obligation to carry cargo and

13

liability insurance, defendant violated 49 C.F.R. §§ 376.12(h) and (j) by charging plaintiffs for drug tests, single state registration and insurance. Plaintiffs' motion for summary judgment will be granted as to these claims.

    2. <u>Fifteen day payment</u>

Next, plaintiffs contend that defendant violated § 376.12(f) by failing to pay their final two week settlements. Before delving into the requirements of § 376.12(f), a question arises whether defendant owed plaintiffs a final payment at all. Defendant contends that plaintiffs each triggered certain default provisions under which they forfeited "two weeks gross income" by walking off the job without first giving notice and by failing to turn in their paperwork on time.

There are a couple of problems with defendant's theory. First, defendant never adduced any evidence that plaintiffs left the job without giving notice, it only adduced evidence that they terminated the agreement. As for plaintiffs' failure to timely turn in their paperwork, a separate provision provides that late paperwork simply results in a "delay of payment." Second, and more important, the default provision that defendant identifies is not triggered by the types of "defaults" that defendant identifies. Instead, it is triggered only by failure to pay the rental payments required by the Winona Leasings lease. This is clear from the context of the default provision, which appears under the header "additional terms to lease for WRN Trucking *financed* owner operators" alongside another provision referencing the applicability of the Winona Leasings lease agreement. The Winona Leasings lease agreement describes default as a failure to make rental payments. Moreover, the default provision itself calls for forfeiture of both the

14

gross income *and the truck*. Surely defendant is not suggesting that the agreement requires an owner-operator to give up his truck every time it fails to comply with any provision of the contract. Because the default clause does not apply to "walking off" on the job or failing to timely hand in paperwork, defendant did owe plaintiffs a payment for their final two weeks.

Turning to the requirements of § 376.12(f), under that section a carrier generally cannot withhold pay once certain delivery documents and other paperwork specified by the regulation have been submitted to the carrier; instead, payment must be made "within 15 days after submission of" certain delivery documents and other paperwork described in the regulation. The section does allow a carrier to withhold pay in one other setting:

> In addition, the lease may provide that, upon termination of the lease agreement, as a condition precedent to payment, the lessor shall remove all identification devices of the authorized carrier and, except in the case of identification painted directly on equipment, return them to the carrier . . . . Until this requirement is complied with, the carrier may withhold final payment.

49 C.F.R. § 376.12(f). In this case, neither of plaintiffs' leases include provisions allowing defendant to withhold payment until identification devices are removed and returned; therefore, there is no basis for defendant to withhold pay on these grounds. This leaves only the question whether defendant failed to pay plaintiffs within 15 days after submission of the required paperwork.

It is undisputed that defendant did not pay plaintiffs at all for their last two weeks. Moreover, it is undisputed that, by November 2007 at the latest, plaintiff Brinker had handed in his required paperwork. Although the parties dispute whether plaintiff Brinker was timely in handing in the required paperwork, this is immaterial to whether defendant violated § 376.12(f)

because defendant may not "set time limits for the submission" of the required paperwork. *Id.* Thus, as to plaintiff Brinker, there are no material factual disputes: defendant failed to pay plaintiff Brinker his final settlement within 15 days of his handing in the paperwork required to receive it. Plaintiff Brinker's motion for summary judgment will be granted as to his claim that defendant violated § 376.12(f).

As to plaintiff Morrissette, the parties dispute whether he turned in his paperwork at all. Unless defendant received plaintiff Morrissette's required paperwork, defendant has not violated § 376.12(f) by failing to pay the last settlement. Therefore, plaintiff Morrissette's motion for summary judgment will be denied as to his claim that defendant violated § 376.12(f).

3. License plate fees and use tax

Plaintiffs contend that defendant violated § 376.12(e) by failing to refund them for the unused amount of base plates called "IRP" license plates. Plaintiffs have now conceded that material factual disputes preclude summary judgment on this issue. Therefore, their motion for summary judgment will be denied as to these claims.

Next, plaintiff Morrissette contends that defendant had already paid his federal 2290 Heavy Vehicle Use Tax, but was charged it once again, apparently in violation of § 376.12(e). Defendant did not respond to plaintiffs Morrissette's contention that he was entitled to the vehicle use tax he was charged after having paid it, thereby waiving any argument that § 376.12(e) might not prohibit such overcharges. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007). Therefore, plaintiff Morrissette's motion for summary judgment will be granted as to this claim.

4. Damages

Plaintiffs contend that the proper calculation of damages is determined by the amount defendant charged them in violation of the Truth in Leasing regulations. If this is true, the issue of damages may be decided now for most claims; the underlying amounts charged are not in dispute. However, defendant contends that "factual issues" are in dispute regarding the issue of damages because defendant has adduced evidence that defendant's charges were "customary" and represented expenses that plaintiffs would have incurred if driving for themselves.

49 U.S.C. § 147404 allows plaintiffs to recover "damages sustained . . . as a result of" a violation of the Truth in Leasing regulations, including violations of 49 C.F.R. § 376.12. Section 376.12 requires motor carriers to include certain provisions and adhere to them. According to defendant, to the extent impermissible charges represent "customary" charges or charges that plaintiffs would have incurred "driving for themselves," they do not represent the amount necessary to "make whole" plaintiffs. I disagree.

The appropriate measure of damages under § 147404 should relate to the purpose for creating the regulation, in this case 49 C.F.R. § 376.12. Section 376.12 requires a motor carrier to "specify" or "clearly specify" and "adhere to" provisions in its lease regarding who is responsible to pay for insurance and other costs related to the business. In short, § 376.12 makes a motor carrier make it clear to the owner-operator exactly who is responsible for what, by putting it in the lease. As the court in *New Prime* noted, the Truth in Leasing regulations "were intended to remedy disparities in bargaining positions between independent owner operators and motor carriers." 398 F.3d at 1070. The role of § 376.12 is to allow the owner-operator to better assess his rights and responsibilities under the lease.

17

Given this background, what should happen if, as in this case, the motor carrier fails to "specify" or "clearly specify" who pays what?  The answer is clear: the motor carrier is responsible for expenses that it has failed to "specify" or "clearly specify" as being the responsibility of the owner-operator.  The alternative proposed by defendant, that the owner-operator still be held responsible for "customary" charges or charges he would pay if driving for himself, is unacceptable.  It would allow motor carriers to offer leases that fail to identify such charges and thereby fail to give the owner-operator the full picture, but face no damages.  Such an approach undermines the purpose of the Truth in Leasing regulations.  Because the motor carrier is responsible for unspecified expenses, it may be held liable for the full amount of charges it makes to the owner-operator for such expenses.

I have concluded that defendant violated § 376.12 by charging plaintiffs of cargo and liability insurance, drug tests and single state registration, failing to pay plaintiff Brinker's last two week settlement and charging plaintiff Morrissette a vehicle use tax he had already paid.  It is undisputed that the amounts of these charges are as follows:

- Brinker's cargo and liability insurance:  $17,236.71
- Brinker's drug tests:  $166.00
- Brinker's single state registration:  $258.59
- Brinker's last two week settlement amount:  $2,808.73
- Morrissette's cargo and liability insurance:  $2,033.62
- Morrissette's drug tests:  $139.00
- Morrissette's vehicle use tax overcharge:  $453.33

Plaintiffs are entitled to those full amounts under 49 U.S.C. § 14704(a)(2); judgment will be entered for plaintiffs for these amounts upon resolution of the remaining claims.

These issues remain for trial:

(a) whether plaintiff Morrissette submitted the necessary papers under 49 C.F.R. § 376.12(f) so that defendant's failure to pay him the last two week settlement violated that provision;

(b) whether defendant violated 49 C.F.R. § 376.12(e) by failing to refund portions of license plate fees paid by plaintiffs; and

(c) whether defendant breached the lease agreement with plaintiff Brinker by failing to pay the owner of the 1988 Peterbilt being purchased by plaintiff Brinker.  (Neither party moved for summary judgment on this issue.)

ORDER

IT IS ORDERED that

1. Defendant's motion for summary judgment, dkt. 24, is DENIED.

2. Plaintiffs' motion for summary judgment, dkt. 16, is GRANTED as to:

   a. Plaintiffs' claim that defendant violated 49 C.F.R. §§ 376.12(h) and (j) by charging plaintiffs for drug tests, single state registration and insurance without clearly specifying those charges in their leases;

   b. Plaintiff Brinker's claim that defendant violated § 376.12(f) by failing to pay plaintiff Brinker his final settlement within 15 days of when he handed in his required paperwork to defendant; and

      c.  Plaintiff Morrissette's claim that defendant violated § 376.12(e) by charging plaintiff Morrissette a federal 2290 Heavy Vehicle Use Tax that he had already paid;

3. Plaintiffs' motion for summary judgment, dkt. 16, is denied as to all other claims.

Entered this 18th day of September, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge